KUHN, Appellant, vs. WAGNER and another, imp., Respondents.

*February 12—September 25, 1920.*

*Sales: Acceptance conditioned on sale of corporate stock on buyer's account: Demand for purchase price of stock: Measure of damages: Purchase of corporate stock: Implied condition: Pledge: Conditions: Recitals in contract: Effect.*

1. A contract for the sale of a motor truck to the owner of five shares of stock in the corporation manufacturing the truck, with provisions relative to the seller's taking such stock in partial payment, is construed to mean that the buyer was not bound to accept and pay for the truck unless and until there had been a sale by the seller of the five shares of the stock transferred by the buyer, out of which sale $500 was to be retained on account of the purchase of the truck, and the balance made available to the buyer to apply on the price at the time fixed for its delivery.

2. In a sale of corporate stock it is an implied condition that the seller will give the requisite notices to the corporation and take the necessary steps to properly transfer title to the buyer.

3. The subsequent act of the buyer of the truck in attaching a sight draft on the seller to a notice to the company of the sale of the stock sent to him for signature by the seller and thereby demanding payment, is not such an act as entitles the seller to treat the contract as broken by the buyer; the seller of the truck, through his act in transferring the stock absolutely to a third person, being precluded from asserting a breach by the buyer.

4. The buyer of the truck, in such case, is entitled to recover, upon breach by the seller, the difference between the value of the

stock when the agreement was made and its value at the time of the trial of the action.

5. The pledgee of the corporate stock in this case is bound by the conditions appearing on the face of the stock and by the recitals in his contract with the pledgor.

APPEAL from a judgment of the circuit court for Waupaca county: BYRON B. PARK, Circuit Judge. *Reversed.*

The plaintiff, *Fred Kuhn,* resident of the city of Shawano, was the owner of five shares of the capital stock of the Four Wheel Drive Auto Company of Clintonville, Wisconsin, prior to September, 1917. Defendant *E. K. Wagner* was interested in selling automobile trucks and negotiated for that purpose for some time with plaintiff. On September 28, 1917, at Shawano, Wisconsin, a written contract, the material parts of which are as follows, was signed by the parties:

One 2-ton Menominee truck, purchased by *Fred Kuhn,* Shawano, Wis., to be delivered April 1, 1918.

| | | |
|---|---|---|
| Price of same | $2,725 | 00 |
| Less 5 per cent. | 130 | 25 |
| | $2,589 | 75 |
| This payment to secure truck at present price | 500 | 00 |
| Balance | $2,089 | 75 |

[Signed] MENOMINEE MOTOR TRUCK CO.
Wisconsin Mgr., *E. K. Wagner.*
Purchaser.

Truck is to be purchased for cash if 5 shares of F. W. D. stock can be disposed of $575. $500 on deposit balance to be turned over to *Mr. Kuhn.* [Signed] FRED KUHN.

If stock is sold at $575 balance of truck is $2,000.
[Signed] E. K. WAGNER.

On October 12, 1917, a written order was signed by plaintiff and defendant *Wagner* on the D. F. Poyer Company of Menominee, Michigan, for such truck, the material parts of which are as follows:

Amount of deposit herewith inclosed ..................... $2,725
This order is paid for with five shares of F. W. D. stock at
$575 per share ..................... $2,875

Stock to be sold by *E. K. Wagner* on or before Jan. 1, 1918,
    and money to be turned over to *Fred Kuhn* to the
    amount of........................................$2,375
Deposit of $500 is to be kept with order.................  500
                                                              $2,875

Balance of $2,000 due when truck is delivered.

                   [Signed]   E. K. WAGNER.
                         FRED KUHN.

On the same date plaintiff handed over the certificate for five shares of stock and the defendant signed a written receipt for the same as follows: "This is a receipt for five shares of F. W. D. stock belonging to *Fred Kuhn* of Shawano, and is turned over to *E. K. Wagner* for sale.   Conditions are mentioned on order for motor truck."

Upon the face of such certificate of stock was printed the following provision from the by-laws of the Four Wheel Drive Auto Company:

"Not transferable unless ten days' written notice is served on the company, with price and name of purchaser, and failure of company to buy or place with other stockholders at such price."

On October 30th defendant *Wagner* received a loan of $500 from the defendant *Black,* turning over to him at such time the certificate of the five shares of stock as collateral security and signing at the same time the following document:

"Whereas, *E. K. Wagner* is owner of five shares capital stock Four Wheel Drive Auto Company, and whereas *Warde E. Black* has advanced $500 to said *E. K. Wagner* and has taken said Four Wheel Drive stock as collateral security, it is understood and agreed that in lieu of interest on said $500 said *Warde E. Black* shall receive one half of all dividends declared on said stock either in cash or in form of stock dividend during the time that said *E. K. Wagner* shall remain the owner of said stock.

"In event of sale of said stock, said *Warde E. Black* shall receive one half of selling price in excess of $575 per share, but in any event said *Warde E. Black* shall receive in case of

sale of said stock not less than $500 advanced by him, regardless of dividends which he may have received prior to said sale."

*Wagner* gave his promissory note on the same day to *Black* for $500, and there was attached to said note a written agreement transferring as collateral security for the payment of such note the five shares aforesaid, with the usual provisions in such form of collateral-security agreements, among them one giving power to the payee, at his option, of making a sale of such security.

The case was tried by the court without a jury upon the issues framed and upon the complaint and counterclaims, and in addition to what appears on the written contract and orders above quoted the court found that there was an additional agreement between the plaintiff and defendant *Wagner* that, whatever the five shares of stock were sold for, they should be accounted for to plaintiff at $575 per share; defendant to have all in excess of that and to make up any deficiency.

The court found that in December, 1917, defendant *Wagner* had a prospective purchaser for said stock at $520 per share, and that thereupon *Wagner* caused to be drafted a form of notice, of date of December 12th, as follows:

"To the Four Wheel Drive Auto Co., City:

"You are hereby notified that I have this day offered for sale to *E. K. Wagner* five shares of your capital stock at $575 each. This notice is made in accordance with your by-laws;"

and the same was sent to plaintiff for his signature and return. That plaintiff signed such notice, but, instead of returning it directly to *Wagner*, attached to it a draft for the amount of the five shares of stock at $575 per share, and forwarded both to a bank in Green Bay to be delivered to *Wagner* upon payment of the draft. The bank immediately notified *Wagner* of the arrival of such signed notice together with the draft.

That later on and under instructions or directions from *Wagner* the bank returned the draft and notice to plaintiff.

That a stock dividend of two and one-half shares and a cash dividend of $180 was declared on such stock in the interim, and such dividends had been held by the defendant corporation pending the determination of this lawsuit.

That the defendant *Wagner* was at all times ready, able, and willing to perform the contract between himself and plaintiff in all respects and did in fact tender performance thereof in accordance with its terms.

Also that, plaintiff having refused to take the truck as ordered, there were damages accruing to the defendant consisting of the loss of $100 deposited by *Wagner* with the manufacturers of the truck and the loss of profits he would have made on the sale, amounting in all to $302.50.

It was further found, based upon a stipulation between the parties, that the value of the stock at the time of the trial was $190 per share.

The court also found that *Black* was apprised of facts from his possession of the stock that put him on inquiry as to plaintiff's rights.

As conclusions of law, upon which judgment in accordance therewith was entered, it was held that defendant *Wagner* was entitled to receive from plaintiff the executed notice of sale of the stock without previous payment of the draft or other condition; is entitled to damages of $302.50, and such damages with the clerk's fees to constitute a lien on the five shares of stock in the possession of defendant *Black*. That defendant *Black* was not entitled to a lien as against the plaintiff, but only as against *Wagner*.

It was further determined that such stock might be sold at the instance of the defendant *Wagner* to secure the payment of the amount adjudged in his favor.

From the judgment entered in accordance therewith the plaintiff has appealed.

For the appellant there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein.*

For the respondents there was a brief by *Kittell & Jaseph* of Green Bay, and oral argument by *L. D. Jaseph.*

The following opinion was filed June 1, 1920:

ESCHWEILER, J.   It is contended on behalf of defendant that the agreement between plaintiff and *Wagner* as evidenced by the writings of September 28 and October 12, 1917, set out in the statement of facts, should be construed to embody two separate and independent contracts, one by plaintiff to purchase the auto truck, and the other by *Wagner* to dispose of plaintiff's five shares of stock, and that the agreement to purchase by plaintiff was not dependent upon a prior sale or accounting by *Wagner* of plaintiff's stock.

We think it plain, however, that the reasonable construction to be given to the contracts between plaintiff and defendant *Wagner* was that plaintiff was not bound to accept and pay for the truck unless and except there had been a sale by *Wagner* of the five shares of stock, out of which sale $500 was to be retained as a deposit on account of the purchase of the truck and the balance thereof evidently to be made available to plaintiff to apply on the purchase price of the truck at the time fixed for delivery thereof in the following April.

As between plaintiff and defendant *Wagner,* therefore, the plaintiff could not be held liable on account of any failure on his part to buy and pay for the truck unless and except the defendant *Wagner* had first sold and accounted for the proceeds at the agreed amount of $575 per share before January 1st, or at least before the time arrived at which plaintiff was to make final payment for the truck, or unless plaintiff himself had otherwise breached the contract.

Unless the trial court was correct under the law and evidence in this case in determining that the plaintiff had breached the contract by attaching to the notice signed by

him to be presented to the Four Wheel Drive Auto Company the sight draft for the agreed price of $575 per share for the five shares, and the implied, if not express, direction to the bank that such notice should not be delivered except upon payment of such sight draft, the judgment below must be reversed.

In the writings between plaintiff and *Wagner* in September and October nothing was said as to the furnishing of the notice specified on the face of the certificates and embodied in the by-laws of the Four Wheel Drive Auto Company. It appears from *Wagner's* testimony that such bylaw and the necessity of such notice did not come to his attention until December and sometime after he had pledged the stock, asserting unequivocal ownership therein by his written agreement with defendant *Black* set forth in the statement of facts.

It may be conceded that notwithstanding the contract between plaintiff and *Wagner* was silent as to the giving of such notice it would still be an implied condition of such contract that plaintiff, *Kuhn,* should take the necessary steps in order to properly pass title of the certificates of stock from himself to defendant *Wagner;* yet we are nevertheless forced to the conclusion that defendant *Wagner* is not, under the testimony in this case, entitled to assert that such attaching of the sight draft and thereby demanding payment was such an act as entitled him to treat the contract as broken by plaintiff and therefore making plaintiff subject to the damages asserted by defendant and allowed by the court.

In the first place, the testimony is without dispute that no word of protest or objection was raised by *Wagner* and brought to the attention of plaintiff at any time while the notice, with the attached draft, was in the hands of the bank in Green Bay, from about January 2d until returned. In that interval *Wagner's* attention had been called by the bank to the fact that the notice and draft were in its hands awaiting his attention. He delays at first giving any atten-

tion to the matter, and at no time during that interval suggests any objection to such procedure, and does no more than suggest to the cashier that there was some dispute about the amount that should be paid or that he wished to see plaintiff about it.

It is also quite clear from *Wagner's* own testimony that he did not then or at any time have any binding contract of sale for this stock to any third person then able, ready, and willing to pay the price he mentioned of $520 per share, or that he was able, ready, and willing to make up the difference between the $520 and the $575 per share, for which amount it was to be accounted for to plaintiff.

Up to the time of the return of the draft and notice and afterwards *Wagner* makes no protest to the plaintiff or notifies him in any manner that such action on plaintiff's part was being considered as a violation of the implied terms of the contract.

Having raised objections to the draft other than that it was an unauthorized act under the contract, and then having directed the cashier of the bank to return such draft and notice, as he did, still remaining silent as to any such claim as he now asserts of an absolute breach, and without any offer of return of the certificates of stock belonging to plaintiff, but which *Wagner* had already placed by his pledge to *Black* beyond his present power to return, he ought not to be heard to assert any such disastrous result as he now urges should follow from plaintiff's act in attaching the draft to the signed notice.

By his transaction with defendant *Black, Wagner* asserted in writing an absolute ownership of the stock, which, as between himself and *Black,* would necessarily estop him from asserting any benefit to himself by reason of such by-law as against *Black.* Having asserted absolute ownership of this stock in his transaction with *Black* and thereby having placed it beyond his power to return the stock to plaintiff except and unless the conditions of the contract with

*Black* were complied with, he ought not to be heard to assert that plaintiff's action with reference to the notice to the company was of substance sufficient to create an absolute breach of the contract between himself and plaintiff, when he either disregards it entirely or treats the same condition as to notice as of no weight or importance in his transaction with *Black*.

We are therefore of the opinion that there was no such substantial breach by plaintiff of the contract on his part as justifies the finding and judgment in favor of defendant *Wagner* in the court below.

The parties stipulated on the trial and subsequently in writing that the value of the Four Wheel Drive Auto Company stock was only $190 per share at the time of the trial, and the court so found. No finding was made as to the market value of the stock at the time of the transactions between plaintiff and defendant in the fall of 1917. From defendant *Wagner's* own testimony, however, it appears that he was negotiating for the sale of this stock in December at $520 per share. This makes the market value of the five shares as they then stood $2,600. At the time of the trial the five shares had become increased by the stock dividend of fifty per cent. thereof to seven and one-half shares. The value of these at the stipulated and found value of $190 per share amounts to $1,425, making a difference or depreciation in the value of the stock of $1,175. This we think to be the proper measure of damages accruing to plaintiff by reason of the stock and for which amount the plaintiff is entitled to judgment as against the defendant *Wagner*.

Although no finding was made in this regard by the court below because of the disposition there made of the issues, yet it appears from all the facts and circumstances reasonably certain that plaintiff could and would have made a sale at the market price of the stock during the time it was in *Wagner's* possession, and so far as defendant *Wagner* is concerned he could not properly be held to assert as a de-

fense to the damages thus awarded against him on account of such depreciation that plaintiff did not go through what would have been an idle ceremony of attempting to sell the stock to someone else, it being in *Wagner's* possession or control.

The court found that the defendant *Black* was chargeable with notice of the rights of the plaintiff as to this stock from what appeared on the face thereof and from the contract between himself and *Wagner*. Defendant *Black* urges in this court, upon notice to that effect, that such finding should be set aside. We see no reason, however, why such should be done, and defendant *Black* can assert no title to this stock as against the plaintiff.

It follows therefrom that the judgment should be reversed and plaintiff awarded a judgment for the amount of the damages as here found against defendant *Wagner,* with his costs in this court and the court below; that the five shares of stock held by defendant *Black* and the two and one-half shares of dividend stock held by the Four Wheel Drive Auto Company, defendant, together with the cash dividend declared in the interim by it and also so held, should be returned to plaintiff.

*By the Court.*—Judgment reversed, and the action remanded with directions to enter judgment in accordance with this opinion.

A motion for a rehearing was denied, with $25 costs, on September 25, 1920.